# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FABRICE GARDEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-1363 (ABJ) |
| | ) | |
| SK&A STRUCTURAL ENGINEERS PLLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

On September 11, 2012, plaintiff Fabrice Gardel was filming a documentary outside of a building located at 1440 New York Avenue. Am. Compl. [Dkt. # 31] ¶¶ 1, 11. He leaned back against a chain linking two bollards together, and a 200-pound bollard fell on his leg and fractured it. *Id.* ¶¶ 4, 14–19. He has brought this action against defendants SK&A Structural Engineers, PLLC ("SK&A")[1] and Concrete Protection & Restoration, Inc. ("CPR"), alleging that they were grossly negligent when they failed to secure the bollards to the ground. *Id.* ¶¶ 38–41.

Both defendants have moved to dismiss plaintiff's single-count complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the action is barred by the applicable statute of limitations, or in the alternative, that plaintiff has failed to state a claim for gross negligence. Mot. of SK&A to Dismiss Am. Compl. [Dkt. # 33] ("SK&A Mot."); Mot. to Dismiss Am. Compl. [Dkt. # 36] ("CPR Mot."). Because plaintiff filed his amended complaint over two years after the expiration of the three-year statute of limitations, the Court will grant defendants'

---

1  In his amended complaint, plaintiff named SK&A Engineers, PLLC, but defendant clarified that the correct legal name of the entity is SK&A Structural Engineers, PLLC. *See* Mem. of P. & A. [Dkt. # 33-1] at 1 n.1.

motions. This holding does not mean that plaintiff was not injured, and it is not a finding on the question of whether defendants bear responsibility for the dangerous situation alleged in the complaint. Notwithstanding the pain and the ongoing inconvenience plaintiff has suffered, the Court is required to follow the law that governs when a lawsuit must be filed.

## BACKGROUND

Plaintiff, a journalist and citizen of France, was in Washington D.C. with his cameraman on assignment filming a documentary. Am. Compl. ¶ 11. They decided to take a video of the window dressing in the White House Gift Store. *Id.* ¶ 12. Large bollards, linked by chains, had been placed along the sidewalk across the street from the store to prevent taxis from stopping there to pick up or drop off patrons. *Id.* ¶¶ 3–4, 15.

On September 11, 2012, while plaintiff searched for the best angle to film the window, he leaned back against one of the chains and, as he puts it, he felt it "release[] all resistance." Am. Compl. ¶ 14. As the top of one of the bollards tilted towards the street, the chain gave way and plaintiff "lost his balance and [fell] backward with all his weight on the chain." *Id.* ¶ 16. Plaintiff's body pulled on the chain, causing the 200 pound bollard to fall onto his left leg. *Id.* ¶ 17.

Plaintiff was immediately transported to George Washington Hospital and diagnosed with an open fracture of his left tibia. Am. Compl. ¶¶ 18–19. A few days later, he was repatriated to France. *Id.* ¶ 20. Plaintiff alleges that he developed an ulcer on his left leg which did not heal until December 2012, leaving a scar and "permanent and substantial muscular atrophy in his left leg." *Id.* ¶¶ 21–22. He claims that he has not regained full mobility in the leg and that he attends physical therapy several times a week. *Id.* ¶ 23. Plaintiff alleges that he has incurred $58,580.66 in medical bills and that he has lost income in excess of $80,028 due to his inability to continue work as a producer of television documentaries, a profession which requires "physical mobility

2

and capacity that he has been unable to retrieve." *Id.* ¶¶ 24, 28–35. Plaintiff claims that the pain from his injury has caused him to stop participating in physical activities, and that it has "substantially deteriorated his relationship with his wife and his two young children." *Id.* ¶ 36. He also alleges that, as a result of the accident, he has been treated for depression since December 2012. *Id.* ¶ 37.

Plaintiff initially filed a complaint on August 21, 2015 against Clarion Partners, LLC, based on an allegation that it was the manager of the 1440 New York Avenue building. *See generally* Compl. [Dkt. # 1]. Clarion Partners represented that it did not own or manage the property at the time of the accident, so plaintiff substituted 1440 New York Avenue Corporation, the owner of the property at the time, as the defendant. *See* Consent Substitution of Party [Dkt. # 5].[2] During the course of discovery, plaintiff learned that SK&A and CPR were the parties responsible for the bollard installation portion of a renovation project at the property, and that the renovation was performed under the auspices of a permit issued by the District of Columbia. Pl.'s Mot. to Join Additional Parties [Dkt. # 28] ("Pl.'s Mot. to Amend") at 1–2;[3] *see also* Am. Compl. ¶ 1. Plaintiff entered into a stipulation of dismissal with 1440 New York Avenue Corporation and sought leave of Court to substitute SK&A and CPR as the proper defendants. Pl.'s Mot. to Amend at 2. On February 27, 2017, the Court granted plaintiff's motion, and the operative complaint took effect the next day. *See* Min. Order (Feb. 27, 2017); *see also* Am. Compl.

---

2 As a result of the consent substitution, plaintiff dismissed Clarion Partners from the action. *See* Consent Substitution of Party [Dkt. # 5]; Min. Order (Oct. 7, 2015).

3 Plaintiff took the deposition of Thomas Garman, an SK&A employee, who verified that SK&A was hired to "supervise the renovation project including verifying that the work would be completed in accordance with the renovation permit." Pl.'s Mot. to Amend at 2.

3

Plaintiff's amended complaint alleges that in 2010, "SK&A was responsible for overseeing the renovation work at 1440 New York Avenue NW . . . that was executed by CPR pursuant to a permit issued by the Government of the District of Columbia." Am. Compl. ¶ 1. Defendants had to "make sure that all work would be done in accordance with the Permit," which required the bollards "to be attached to the ground through four bolts anchored into the sidewalk concrete" to prevent them from falling. *Id.* ¶¶ 2, 5. The permit included drawings that depicted how to attach the bollards to the ground. *See id.*; *see also* Ex. 2 to Pl.'s Opp. to Def.'s Mot. for Summ. J. [Dkt. # 21-2] ("Permit").[4] Plaintiff claims that defendants knew that the bollards were not bolted into the ground properly, and that they failed to notify the city inspector. Am. Compl. ¶¶ 6–7. He also alleges that before the final inspection of the renovations, SK&A "instructed CPR to place the bollards in a straight line and caulk the perimeter of the bollards that touches the sidewalk" instead of bolting them down, and that "CPR complied with the instruction." *Id.* ¶¶ 8–9. As a result, the city inspector failed to discover that the bollards had not been properly installed as required by the permit. *Id.* ¶ 10. The complaint alleges that defendants were grossly negligent when installing the bollards, and that their negligence resulted in serious bodily harm to plaintiff. *See id.* ¶¶ 38–41.

Both defendants moved to dismiss the complaint with prejudice, arguing that the action is barred by the three-year statute of limitations or, in the alternative, that it should be dismissed for failing to state a claim. *See* SK&A Mot.; Mem. of P. & A. [Dkt. # 33-1] ("SK&A Mem."); CPR Mot.; Mem. of P. & A. [Dkt. # 36-1] ("CPR Mem."). Plaintiff argues that the statute of limitations did not begin to run against defendants until he learned of their identities and wrongdoing through discovery, and he also maintains that the amended complaint includes sufficient facts to support a

---

4 Because the Permit is explicitly referred to in the complaint, the Court may consider it when ruling on the motion to dismiss. *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

4

claim of gross negligence.  *See* Pl.'s Opp. to SK&A Mot. [Dkt. # 35] ("Pl.'s SK&A Opp.") at 2–3; Pl.'s Opp. to CPR Mot. [Dkt. # 39] ("Pl.'s CPR Opp.") at 2–4.[5]  Since the Court will dismiss the case on limitations grounds, it need not address the merits of the claim.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 678–79.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678, citing *Twombly*, 550 U.S. at 556.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*, quoting *Twombly*, 550 U.S. at 556.  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all

---

5   Defendants also filed replies to both of plaintiff's oppositions.  *See* Reply of SK&A to Pl.'s SK&A Opp. [Dkt. # 38] ("SK&A Reply"); Reply of Def. CPR to Pl.'s CPR Opp. [Dkt. # 40] ("CPR Reply").

inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt*, 226 F. Supp. 2d at 196, citing *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624–25.

## ANALYSIS

A federal court sitting in diversity "looks to the state law to determine whether a cause of action based upon state law has expired." *A.I. Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995), citing *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945). The District of Columbia "treat[s] statutes of limitations as procedural, and therefore almost always mandate[s] application of the District's own statute of limitations." *Id.*, citing *Namerdy v. Generalcar*, 217 A.2d 109, 113 (D.C. 1966) ("[A] limitation on the time of suit is procedural and is governed by the law of the forum."). Under District of Columbia law, an action for negligence must be brought within three years after the cause of action accrues. D.C. Code § 12-301(8).[6]

---

6    Defendants agree that the District of Columbia three-year statute of limitations for personal injury claims applies in this case, *see* SK&A Mem. at 3; CPR Mem. at 3, and although plaintiff does not expressly state his position on the issue, he cites to District of Columbia law in discussing the statute of limitations. *See* Pl.'s SK&A Opp. at 3; Pl.'s CPR Opp. at 3.

"[A] cause of action accrues for purposes of the statute of limitations when the plaintiff has either actual notice of her cause of action or is deemed to be on inquiry notice." *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996). The theory behind inquiry notice is that if the plaintiff had met his "duty to act reasonably under the circumstances in investigating matters affecting [his] affairs, such an investigation, if conducted, would have led to actual notice." *Id.* Either form of notice is sufficient to start the statute of limitations clock. *Cevenini v. Archbishop of Wash.*, 707 A.2d 768, 771 (D.C. 1998).

When the fact of an injury is readily determined, "a claim accrues . . . at the time the injury actually occurs." *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001), quoting *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994). But District of Columbia courts have recognized that there are cases "where the relationship between the fact of injury and the alleged tortious conduct is obscure when the injury occurs." *Bussineau v. President & Dirs. of Georgetown Coll.*, 518 A.2d 423, 425 (D.C. 1986), citing *Stager v. Schneider*, 494 A.2d 1307, 1316 (D.C. 1985). Under those circumstances, courts will apply the discovery rule.

> [T]he discovery rule is designed to prevent the accrual of a cause of action before an individual can reasonably be expected to discover that he has a basis for legal redress, [and] the statute should not commence until a claimant knows, or through the exercise of due diligence, should know, that his injury resulted from someone's wrongdoing.

*Id.* at 430.

Plaintiff contends that the "discovery rule" applies in this case because he did not discover the identity of the responsible party until after he had filed his initial complaint. Pl.'s SK&A Opp. at 3; *see also* Pl.'s CPR Opp. at 3. He insists that the statute of limitations should "be tolled and run from the time [p]laintiff became aware of the gross negligence, which [was] December 16,

7

2016."[7] Pl.'s SK&A Opp. at 2; *see also* Pl.'s CPR Opp. at 3. Defendants contend that plaintiff was on inquiry notice of a cause of action the day he was injured, and that the discovery rule does not apply. SK&A Mem. at 4–6; CPR Mem. at 4–5.

"Under both the general rule of claim accrual and the discovery rule exception, the statute of limitations begins to run when a plaintiff either has actual knowledge of a cause of action or is charged with knowledge of that cause of action." *Cevenini*, 707 A.2d at 771, citing *Diamond*, 680 A.2d at 372. Since defendants do not argue that plaintiff had actual notice of a claim against them, the Court must only determine when plaintiff was placed on inquiry notice. *See Doe v. Medlantic Health Care Grp., Inc.*, 814 A.2d 939, 945 (D.C. 2003) ("The law of limitations requires only that the plaintiff have *inquiry notice* of the existence of a cause of action.") (emphasis in original), quoting *Hendel v. World Plan Exec. Council*, 705 A.2d 656, 661 (D.C. 1997). And plaintiff was well aware of the existence of his cause of action, and the fact that it arose from someone's wrongdoing, the day he fell.

"[I]nquiry notice will be charged to a plaintiff when he is aware of an injury, its cause, and some evidence of wrongdoing." *Cevinini*, 707 A.2d at 771, citing *Diamond*, 680 A.2d at 380. A court can deem a plaintiff to be on inquiry notice "even if [the plaintiff] is not actually aware of each essential element of his cause of action." *Id.* Further, when multiple defendants may be responsible for a plaintiff's injuries, the cause of action will accrue as to all defendants if a

---

7   While plaintiff confuses the matter with his use of the word "tolled," the gist of his argument is that the cause of action did not accrue, and that the statute of limitations did not start to run, until after he learned in discovery who had acted negligently in connection with the condition of the bollards, not that any equitable tolling doctrine should be applied. *See* Pl.'s SK&A Opp. at 3 ("As in all cases where the discovery rule applies, the statute of limitations for gross negligence does not run from the time [p]laintiff was aware or should have been aware of the defendant's involvement with the bollards, but when he discovered or should have discovered its gross negligence . . . .").

8

"reasonable plaintiff with knowledge of the misconduct of one [defendant] would have conducted an investigation as to the other," and "that investigation would, as a matter of law, have revealed some evidence of wrongdoing on the part of the other defendant." *Diamond*, 680 A.2d at 380; *see also Cevinini*, 707 A.2d at 773.

The Court concludes that plaintiff was on inquiry notice of his claim against defendants on the day his injury occurred, and therefore, plaintiff's claims against any – and all – defendants accrued on that day. *See Doe*, 814 A.2d at 945. On September 11, 2012, plaintiff leaned on a chain he presumed was connected to two bollards firmly anchored to the ground, but one fell on him and crushed his leg. There is no question that plaintiff was aware at that time of the fact of his injury – a broken leg – and its cause – the unmoored bollard. While plaintiff argues that he cannot be charged with inquiry notice until he discovered the proper party to sue, *see generally* Pl.'s SK&A Opp.; Pl.'s CPR Opp., that is not the standard. He must just be aware of "*some evidence of wrongdoing.*" *Cevinini*, 707 A.2d at 771 (emphasis added). Plaintiff realized from the start that the bollard was not bolted to the ground, and therefore, he was on notice that someone had failed to secure it properly, or at the least, that someone had failed to maintain it properly. This satisfies the quantum of knowledge required to put a plaintiff on inquiry notice. This conclusion is bolstered by the fact that plaintiff brought his original negligence claim, alleging that "the pillars [were] not anchored in the ground but [were] simply resting on the ground" within the three-year statute of limitations. *See* Compl. ¶ 14.[8]

---

8   In order to fully examine the legal issues before the Court, the parties were ordered to file supplemental briefing on whether Federal Rule of Civil Procedure 15(c) mandates that the amended complaint relate back to the date the complaint was originally filed. Neither party asserted that Rule 15(c) applies. *See* Pl.'s Answer to Ct.'s Req. for Br. [Dkt. # 44]; Def. CPR's Resp. to Req. for Br. [Dkt. # 46]; Supp. Br. of SK&A [Dkt. # 47]. Therefore, the Court will view the amended complaint filed on February 28, 2017 as separate from the original complaint filed on August 21, 2015.

Moreover, a reasonable person would have conducted an investigation after his injury, and that investigation would have revealed some evidence of wrongdoing on the part of the named defendants. *See Cevinini*, 707 A.2d at 773. Once plaintiff began conducting discovery, he obtained the permit governing the installation of the bollards, and it plainly identifies SK&A as the engineering consultant for the project. *See* Permit. Plaintiff was then able to depose an SK&A representative, who testified about CPR's involvement in the building renovation. *See* Pl.'s Mot. to Amend at 2. The Court finds that a reasonably diligent plaintiff could and would have conducted additional investigation prior to filing suit, and he would have easily discerned some evidence of wrongdoing on the part of the named defendants. *See Cevinini*, 707 A.2d at 773.

Plaintiff's repeated attempts to sue the proper defendant demonstrate the need to enforce the applicable statute of limitations in this case. Courts have "emphasized balancing the right of the plaintiff to a remedy against the right of the defendant to be free from stale claims." *Diamond*, 680 A.2d at 378. While plaintiff's injury is unfortunate, the law of limitations exists to "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, . . . fading memories, disappearance of documents, or otherwise." *Farris v. Compton*, 652 A.2d 49, 58 (D.C. 1994), quoting *United States v. Kubrick*, 444 U.S. 111, 117 (1979). The procedural background of this case indicates that plaintiff filed this lawsuit just prior to the expiration of the three-year statute of limitations, and *then* he proceeded

to attempt to discover the identities of the proper defendants.[9] This puts defendants at just the sort of disadvantage the statute of limitations is designed to prevent.

Because plaintiff was on inquiry notice of his claim against all defendants on the day he was injured, the statute of limitations began to run on that day, and plaintiff's claim is time-barred.

## CONCLUSION

The Court will grant both defendants' motions to dismiss with prejudice since the amended complaint was filed well after the expiration of the applicable three-year statute of limitations.

A separate order will issue.

/s/ Amy B. Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: December 21, 2017

---

9     There is a chance that plaintiff has still sued the wrong entities. In its motion to dismiss, defendant SK&A argues that it is "not the legal entity that performed any of the services discussed in the Amended Complaint. [Rather,] Smislova, Kehnemui & Associates, P.A., a Maryland corporation, [was] the legal entity that provided services associated with the referenced property." SK&A Mem. at 1 n.1; *see also* Permit (naming this entity as the project's structural engineers). In light of this representation, plaintiff states that he "is prepared to substitute [Smislova], Kehnemui & Associates, P.A. for SK&A and serve it accordingly." Pl.'s SK&A Opp. at 4.

11